1   Robert A. Van Kirk (*pro hac vice* appl.
    forthcoming)
2   John S. Williams (*pro hac vice* appl.
    forthcoming)
3   **WILLIAMS & CONNOLLY LLP**
    725 Twelfth Street, N.W.
4   Washington, DC 20005
    Telephone:    (202) 434-5000
5   Facsimile:    (202) 434-5029
    E-mail:       rvankirk@wc.com
6                 jwilliams@wc.com

James McManis (40958)
William Faulkner (83385)
Christine Peek (234573)
**McMANIS FAULKNER**
a Professional Corporation
50 West San Fernando Street, 10th Floor
San Jose, California 95113
Telephone:    (408) 279-8700
Facsimile:    (408) 279-3244
E-mail:       cpeek@mcmanislaw.com

7   *Attorneys for Plaintiff*
    *Lockheed Martin Corporation*
8

9               **UNITED STATES DISTRICT COURT**

10             **NORTHERN DISTRICT OF CALIFORNIA**

11                    **SAN JOSE DIVISION**

12

13  LOCKHEED MARTIN CORPORATION,        Case No. _____

14              Plaintiff,              **PLAINTIFF'S MEMORANDUM OF**
                                        **POINTS AND AUTHORITIES IN**
15  v.                                  **SUPPORT OF ITS EX PARTE**
                                        **APPLICATION FOR TEMPORARY**
16  ACEWORLD HOLDINGS PTY LTD.; AMB     **RESTRAINING ORDER WITHOUT**
    PROPERTY (PROVIDENCE) PTY LTD.;     **NOTICE AND ORDER TO SHOW**
17  IVORYROSE HOLDINGS PTY LTD., as Trustee for  **CAUSE WHY PRELIMINARY**
    THE ASHFORTH SUPERANNUATION FUND;   **INJUNCTION SHOULD NOT**
18  HOPERIDGE ENTERPRISES PTY LTD., as Trustee  **ISSUE**
    for the JONES FAMILY TRUST; TFW
19  CORPORATE PTY LTD.; KHAKI INVESTMENTS
    PTY LTD.; MARBRUCK INVESTMENTS, LLC;
20  MICHAEL F. ASHFORTH; KEMPER B. SHAW;
    and JAMES D. TAYLOR,
21
                Defendants.
22

23

24

25

26

27

28

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPP. OF
APPL. FOR TEMPORARY RESTRAINING ORDER

1

**TABLE OF CONTENTS**

2

INTRODUCTION.................................................................................................1

3

STATEMENT OF FACTS....................................................................................2

4

ARGUMENT .......................................................................................................7

5

     A.    The Court Should Hear Lockheed Martin's Application on an Ex Parte Basis

6

           and Without Notice to Defendants...................................................................8

7

     B.    Defendants Are Estopped from Bringing Any Claims Arising from Their

8

           Equity Investment in Collinear Outside of a United States Court. ................11

           1.    Defendants Agreed that Claims Like Theirs Should Be Brought in a

9

                   United States Court...........................................................................12

10

           2.    Defendants Must Comply with the Forum-Selection Clause Regardless

                   of Whether Lockheed Martin Was a Signatory to the Shareholders

11

                   Agreement...........................................................................................13

12

     C.    Lockheed Martin Is Entitled to a Temporary Restraining Order and Anti-Suit

           Injunction To Enforce the Forum-Selection Clause. ........................................16

13

           1.    This Action Is Dispositive of Any Action Against Lockheed Martin

14

                   Abroad.................................................................................................17

15

           2.    Defendants' Initiation of a Suit in a Foreign Forum Would Frustrate

                   the United States Courts' Policy of Enforcing Forum-Selection

16

                   Clauses. ..............................................................................................19

17

           3.    This Dispute Between Private Entities Does Not Impact Comity. ......20

18

           4.    A Temporary Restraining Order Should Be Ordered Under the

                   Traditional *Winter* Factors to the Extent They Remain Relevant........21

19

CONCLUSION ...................................................................................................23

20

21

22

23

24

25

26

27

28

**TABLE OF AUTHORITIES**

**CASES**

*Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011).................21

*American Employers' Insurance Co. v. Elf Atochem North America, Inc.*, 656 A.2d 58 (N.J. Super. Ct. App. Div. 1995) ........................................................................7

*Applied Medical Distribution Corp. v. Surgical Co. BV*, 587 F.3d 909 (9th Cir. 2009) .................................................................................................. passim

*ASDC Holdings, LLC v. Richard J. Malouf 2008 All Smiles Grantor Retained Annuity Tr.*, No. 6562-VCP, 2011 WL 4552508 (Del. Ch. Sept. 14, 2011)...12, 13, 20

*Ashall Homes Ltd. v. ROK Entertainment Group Inc.*, 992 A.2d 1239 (Del. Ch. 2010) .........................................................................................12, 13, 14

*Aveta Inc. v. Cavallieri*, 23 A.3d 157 (Del. Ch. 2010)..............................................12

*Aviation West Charters, LLC v. Freer*, No. N14C-09-271 WCC CCLD, 2015 WL 5138285 (Del. Super. Ct. July 2, 2015). .................................................................14

*Brinker v. JP Morgan Chase, N.A.*, No. 13-CV-01344-LHK, 2013 WL 7798675 (N.D. Cal. May 17, 2013) ...................................................................................16

*Capital Group Cos. v. Armour*, No. Civ.A. 422-N, 2004 WL 2521295 (Del. Ch. Oct. 29, 2004) .......................................................................................................14

*Carlyle Investment Management L.L.C. v. Moonmouth Co. SA*, 779 F.3d 214 (3d Cir. 2015) ................................................................................................14, 20

*Carlyle Investment Management L.L.C. v. National Industries Group (Holding)*, 2012 WL 4847089 (Del. Ch. Oct. 11, 2012) .........................................................12

*Cisco Systems, Inc. v. GTEC*, No. 10-CV-04960, 2011 WL 13253336 (N.D. Cal. Sept. 27, 2011)...................................................................................................19

*E. & J. Gallo Winery v. Andina Licores S.A.*, 446 F.3d 984 (9th Cir. 2006) ..... passim

*Fellowes, Inc. v. Changzhou Xinrui Fellowes Office Equipment Co.*, No. 11 C 6289, 2012 WL 3544841 (N.D. Ill. Aug. 16, 2012) .........................................................7

*Graham Technology Solutions, Inc. v. Thinking Pictures, Inc.*, 949 F. Supp. 1427 (N.D. Cal. 1997)...................................................................................................15

*H-D Mich., LLC v. Hellenic Duty Free Shops S.A.*, No. 11-CV-00742, 2012 WL 404895 (E.D. Wis. Feb. 7, 2012), *aff'd*, 694 F.3d 827 (7th Cir. 2012) ..................7

*Hadley v. Shaffer*, No. Civ.A. 99-144-JJF, 2003 WL 21960406 (D. Del. Aug. 12, 2003) ........................................................................................................14

*Holland America Line Inc. v. Wartsila North America, Inc.*, 485 F.3d 450 (9th Cir. 2007) ...........................................................................................................15

*iModules Software, Inc. v. Essenza Software, Inc.*, No. 2017-0733-JTL, 2017 WL 6596880 (Del. Ch. Dec. 22, 2017) ........................................................14

*In re Red Dot Building System, Inc.*, No. 15-cv-00608, 2015 WL 9487554 (Tex. Ct. App. Dec. 29, 2015) ...............................................................................7

*Zapata Off-Shore Co. v. M/S Bremen (In re Unterweser Reederei GMBH)*, 428 F.2d 888 (5th Cir. 1970), *aff'd on rehearing en banc*, 446 F.2d 907 (1971) ................19

*Interdigital Technology Corp. v. Pegatron Corp.*, No. 15-cv-02584, 2015 WL 3958257 (N.D. Cal. June 29, 2015) ............................................................ passim

*Microsoft Corp. v. Motorola, Inc.*, 696 F.3d 872 (9th Cir. 2012) ......................16, 19

*Pittsburgh-Corning Corp. v. Askewe*, 823 S.W.2d 759 (Tex. Ct. App. 1992).............7

*Prods. & Ventures International v. Axus Stationary (Shanghai) Ltd.*, No. 16-cv-00669-YGR, 2017 WL 201703 (N.D. Cal. Jan. 18, 2017) ....................................15

*Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126 (9th Cir. 2006)...........8, 9, 10

*Seattle Totems Hockey Club, Inc. v. Nat'l Hockey League*, 652 F.2d 852 (9th Cir. 1981) ..................................................................................................19

*Shutterfly, Inc. v. ForeverArts, Inc.*, No. CR 12-3671 SI, 2012 WL 2911887 (N.D. Cal. July 13, 2012) ...............................................................................8

*Simpkins v. Southern Wine & Spirits of America, Inc.*, No. C-10-02353-EDL, 2010 WL 3155844 (N.D. Cal. Aug. 9, 2010) ................................................................14

*Winter v. National Resources Defense Council, Inc.*, 555 U.S. 7 (2008) ............17, 21

*Wofford v. Hamilton*, No. C 13-2467 SBA, 2013 WL 2456582 (N.D. Cal. June 6, 2013) ..................................................................................................10

*Zynga, Inc. v. Vostu USA, Inc.*, No. 11-cv-02959, ECF No. 60 (N.D. Cal. Aug. 11, 2011) ........................................................................................7, 17, 21, 22

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPP. OF
APPL. FOR TEMPORARY RESTRAINING ORDER

**OTHER AUTHORITIES**

Andrew S. Bell, *Forum Shopping and Venue in Transnational Litigation* § 4.139
  (2003) .................................................................................................................9, 21

Federal Rule of Civil Procedure 65(b) ......................................................................9

N.D. Cal. Civil Local Rule 65-1(b) ............................................................................9

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPP. OF
APPL. FOR TEMPORARY RESTRAINING ORDER

**INTRODUCTION**

Plaintiff Lockheed Martin Corporation ("Lockheed Martin") moves, on an ex parte basis, for a temporary restraining order ("TRO") and an order to show cause why a preliminary injunction should not issue against Defendants[1] that prevents them from initiating any action to preclude a United States court from determining the validity and applicability of forum-selection clauses that require litigation to take place in the United States.  Specifically, Lockheed Martin seeks a TRO enjoining Defendants from (a) filing claims against Lockheed Martin in a jurisdiction other than one in the United States, and (b) seeking injunctive relief in a foreign forum to prevent Lockheed Martin from seeking the aforementioned anti-suit injunctive relief or any other preliminary anti-suit injunction or otherwise limiting Lockheed Martin's available relief in United States courts regarding Defendants' asserted claims.

Lockheed Martin faces an imminent risk that Defendants will both file suit against Lockheed Martin in a foreign jurisdiction (Australia) and seek injunctive relief precluding Lockheed Martin from seeking to enforce the exclusive United States forum-selection clause in a United States court.  Both actions by Defendants would be in violation of agreements into which Defendants entered.

Defendants are sophisticated Australian investment firms and wealthy individuals associated with them.  As is relevant here, they are shareholders in Collinear Networks, Inc. ("Collinear"), a U.S. corporation with its principal place of business in California that has been seeking to develop and commercialize a product that uses laser and radio technology to both improve and reduce the cost of wireless data transmission.  Collinear retained Lockheed Martin as a contractor on a work-for-hire basis to assist Collinear with product development.  Disappointed with Collinear's progress to date, and with its cash reserves running low, Defendants sought a

---

[1] Defendants are AMB Property (Providence) Pty Ltd. ("AMB"); Ivoryrose Holdings Pty Ltd., as Trustee for The Ashforth Superannuation Fund; and Michael F. Ashforth (collectively, the "AMB Defendants"); Aceworld Holdings Pty Ltd.; Khaki Investments Pty Ltd.; Marbruck Investments, LLC ("Marbruck"); TFW Corporate Pty Ltd.; Kemper B. Shaw; and James D. Taylor (collectively, the "Marbruck Defendants"); and Hoperidge Enterprises Pty Ltd., as Trustee for the Jones Family Trust ("Hoperidge").

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPP. OF
APPL. FOR TEMPORARY RESTRAINING ORDER

significant cash infusion and other concessions from Lockheed Martin.  In negotiating that potential investment by Lockheed Martin, Defendants through their representative have asserted that they have claims against Lockheed Martin arising from initial investments in Collinear.  The crux of those claims is that Collinear misled them about the progress on and capabilities of its product when Defendants were considering whether to buy stock in Collinear.  They allege that Lockheed Martin assisted Collinear in this process.  Based on these alleged misrepresentations, Defendants threatened to initiate litigation against Lockheed Martin in Australia under Australian law if Lockheed Martin did not invest in Collinear, which is now under the voting control of Defendants.

Defendants' initiating litigation in Australia would be a violation of the agreements Defendants made when they became shareholders in Collinear. Under the terms of the Collinear Shareholders Agreement, by which all Defendants are bound, any lawsuit arising from their equity investment in Collinear must be brought under Delaware law in the federal or state courts of the United States.  Lockheed Martin does not seek by this motion to foreclose Defendants from seeking legal redress for their asserted claims should they wish to pursue them—although those claims are meritless.  Rather, Lockheed Martin seeks to prevent Defendants from frustrating the jurisdiction of United States courts by filing suit in Australia, where litigants who seek to evade forum-selection clauses are advised to obtain ex parte injunctions blocking parties from enforcing those clauses.

Because Defendants have threatened to violate their agreements under the Shareholders Agreement, and could at any moment seek ex parte relief in Australia to inhibit Lockheed Martin's ability to invoke the forum-selection clauses, this Court should enter a temporary restraining order preventing them from doing so.  Such relief is necessary to maintain the status quo pending full briefing on Lockheed Martin's requested preliminary injunction.

## STATEMENT OF FACTS

The founders of Collinear identified a business opportunity arising from the rapid growth in global internet and mobile data traffic.  They founded Collinear, a Delaware corporation with its

principal place of business in Santa Clara, California.  Verified Compl. ¶ 8.  In December 2014, Collinear contracted with Lockheed Martin to assist in developing a high-capacity wireless transmission system that would combine free space optical (FSO) laser and radio frequency (RF) technologies to overcome the limitations of each technology when used by itself.  *Id.* ¶ 22.  If successful, the product would enable fast, reliable transmission of large amounts of data across significant distances and under diverse outdoor environmental conditions.

To develop that product, Collinear required capital and so offered shares in the company to potential investors, including Defendants.  *Id.* ¶ 23.  Defendants assert that, in deciding to invest in Collinear, they engaged in due diligence and Collinear made a variety of information available to the investors and their advisors and consultants.  In November 2014, Defendant Hoperidge participated in Collinear's first round of financing.  *Id.*  In 2015, Collinear decided to engage in a second round of financing, in which it sought to secure $100 million in financing.  *Id.* ¶ 24.  In March 2016, Defendants AMB and Marbruck joined Hoperidge in participating in this round of financing, and the three firms provided most of the $50.6 million Collinear was able to raise at that time, well short of the company's $100 million target.  *Id.* ¶ 28.

In order to become shareholders in Collinear, Defendants had to, and did, become parties to Collinear's Shareholders Agreement by signing copies of the Adoption Agreement.  *Id.* ¶ 29. Specifically, each Defendant entered into an Adoption Agreement with Collinear which states that the Defendant "acknowledges that [it] is acquiring certain equity securities of the Company (the 'Equity Securities') subject to the terms and conditions of the Agreement."  Ex. B § 1.[2]  Each Defendant further agreed that "the Equity Securities acquired by [it] shall be bound by and subject to the terms of the Agreement" and adopted "the [Shareholders] Agreement with the same force and effect as if [the Defendant] were originally a Shareholder thereto."  *Id.* § 2.  Accordingly,

---

[2] All *lettered* exhibits referenced herein are exhibits to the Verified Complaint filed by Lockheed Martin.  To assist the Court, we are attaching two *numbered* exhibits to this memorandum, which are copies of two court orders, one from a court in this District and another from the Royal Court in Guernsey.

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPP. OF
APPL. FOR TEMPORARY RESTRAINING ORDER

Defendants' initial purchases of stock were made in connection with and pursuant to the Shareholders Agreement.

All subsequent acquisitions of Collinear stock by Defendants were as well.  Pursuant to the Shareholders Agreement, "[e]ach Shareholder agrees that any other Equity Securities of the Company which it hereafter acquires . . . shall be subject to the provisions of this Agreement to the same extent as if held on the date hereof."  Ex. A § 4.4.

As is relevant here, the Shareholders Agreement contains clear forum-selection and choice-of-law provisions.  The forum-selection provision is found at Section 4.11, and allows for litigation concerning the agreement to occur only in "the federal and state courts of the United States" as to which venue can be established.  Under that provision:

- Each party "*irrevocably and unconditionally submits to the personal jurisdiction of the federal and state courts of the United States in each and every jurisdiction where venue is proper with respect to such party* and, if venue is not proper in any such jurisdiction, irrevocably and unconditionally submits to the personal jurisdiction of the federal and state courts within the County of Denver in the State of Colorado."  *Id.* § 4.11(a) (emphasis added).

- "[A]ny *actions or proceedings arising in connection with this Agreement or the transactions contemplated by this Agreement shall be brought, tried and determined only in such courts*."  *Id.* § 4.11(c) (emphasis added).

- Each party "*agrees that it will not bring any action relating to this Agreement or the transactions contemplated by this Agreement in any court other than the aforesaid courts*."  *Id.* § 4.11(e) (emphasis added).

The Shareholders Agreement's choice-of-law provision is equally clear.  Section 4.9 provides that Delaware law will govern "any claim, controversy or dispute arising under [the Shareholders Agreement] or related thereto, the relationship of the parties, and/or the interpretation and enforcement of the rights and duties of the parties, whether arising in Law or in equity, in contract, tort or otherwise."  *Id.* § 4.9.

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPP. OF
APPL. FOR TEMPORARY RESTRAINING ORDER

1   Over time, Defendants made additional investments in Collinear.  Fifteen months after

2   AMB, Marbruck, and Hoperidge all invested in Collinear's second round of financing, in June

3   2017, those three Defendants created a $50 million convertible note facility with Collinear,

4   allowing Defendants to loan money to Collinear in exchange for debt that they could then convert

5   into shares in Collinear under certain circumstances, by executing a Senior Secured Note and

6   Warrant Purchase Agreement ("Note & Warrant Agreement").  Verified Compl. ¶ 33.  That

7   agreement further provides that "each party agrees to and does hereby submit to the jurisdiction

8   and venue of, any state or federal court located in the State of California."  Ex. C § 9.2.

9   Simultaneously with entering into the Note & Warrant Agreement, AMB, Marbruck, and

10   Hoperidge entered into the Voting Agreement with Collinear under which each got at least one

11   seat on the Collinear board of directors.   Verified Compl. ¶ 34.  The Voting Agreement, like the

12   Shareholders Agreement and the Note & Warrant Agreement, contemplated litigation only in

13   American courts—and, in this instance, specifically this Court.  That agreement provides that the

14   parties "irrevocably and unconditionally submit to the jurisdiction of the state courts of California

15   and to the jurisdiction of the United States District Court for the District of Northern [sic]

16   California for the purpose of any suit, action or other proceeding arising out of or based upon [the

17   Voting Agreement]."  Ex. D § 6.16.  In March 2018, AMB, Marbruck, and Hoperidge doubled the

18   size of the convertible note facility, expanding it from $50 million to $100 million.  Verified

19   Compl. ¶ 35.

20   Now, approximately sixteen months later, Collinear is running low on available funding.

21   Accordingly, starting in about November 2018, Defendants have threatened litigation against

22   Lockheed Martin, asserting that they had claims arising from their initial purchase of stock in

23   Collinear, in an effort to salvage their investment by securing a significant equity investment by

24   Lockheed Martin in Collinear.  *See* Blair Decl. (Ex. E) ¶ 6.  Defendants have alleged that

25   Lockheed Martin personnel responded to some questions from investors and that information from

26   Lockheed Martin was provided to investors by Collinear.  Defendants have also alleged that

27   Lockheed Martin personnel sometimes participated in Collinear's presentations, meetings, and

28

5

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPP. OF
APPL. FOR TEMPORARY RESTRAINING ORDER

1   demonstrations with investors.  Defendants have been represented in the negotiation principally by

2   a senior executive at AMB, Michael Ashforth, who also has become a board member of Collinear

3   and, because he owns shares in the company in his individual capacity, is a Defendant in this

4   action.  In conversations with the then-Vice President for Strategy and Business Development for

5   Lockheed Martin's Space Business Area, Defendants volunteered documents that they assert

6   substantiate their claims.  The two documents apparently were provided to them by Collinear in

7   due diligence, but Defendants allege they may have been initially prepared by Lockheed Martin.

8   *Id.* ¶ 5.

9       More relevant here, Defendants, who are Australian, have emphasized that they would sue

10  in Australia.  *Id.* ¶ 6; *see also* Gustafson Decl. (Ex. F) ¶ 6.  Indeed, Defendants expressly

11  recognized that their claims would be meritless under US law, but suggested that Australian courts

12  would be more open to such claims.  Blair Decl. (Ex. E) ¶ 7.

13      Lockheed Martin and Defendants engaged in discussions over a number of months, during

14  which Defendants repeated their position that they had potential claims against Lockheed Martin

15  under Australian law that they would bring in Australia.  Gustafson Decl. (Ex. F) ¶¶ 5–7.  On at

16  least one occasion, Defendants took the step of identifying three different Australian statutes under

17  which they believed to have claims.  *Id.* ¶ 6.  Defendants have overtly threatened to sue unless

18  Lockheed Martin acceded to an investment that the company cannot accept.  *Id.* ¶¶ 7–8.  With

19  negotiations concluded, Lockheed Martin anticipates Defendants will seek to file in Australia

20  imminently, in violation of the Shareholders Agreement to which Defendants are each parties.

21      Worse yet, Lockheed Martin fears that Defendants will seek to, on an ex parte basis, secure

22  an injunction blocking Lockheed Martin from asserting the forum-selection clause in any

23  American forum, which is the forum that Defendants agreed would hear any dispute over their

24  investments in Collinear.  Such ex parte injunctions are recommended by leading authorities in

25  Australia.  Accordingly, Lockheed Martin now moves this Court to temporarily restrain

26  Defendants from bringing claims against Lockheed Martin arising out of their investment in

27  Collinear outside of the United States.

28

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPP. OF
APPL. FOR TEMPORARY RESTRAINING ORDER

1

**ARGUMENT**

2

   "Anti-suit injunctions may be the only viable way to effectuate valid forum selection

3

clauses."  *Applied Med. Distrib. Corp. v. Surgical Co. BV*, 587 F.3d 909, 919 (9th Cir. 2009).

4

That is why the Ninth Circuit has twice gone so far as to reverse district courts and remand with

5

instructions to enjoin foreign litigation.  *E.g.*, *id.* at 921 (reversing district court and remanding for

6

entry of anti-suit injunction); *E. & J. Gallo Winery v. Andina Licores S.A.*, 446 F.3d 984, 992 (9th

7

Cir. 2006) (same).  And that is why courts in this District and nationwide regularly grant TROs

8

restraining litigation abroad on an ex parte basis.  *See* Order Granting in Part Vostu's Application

9

for Temporary Restraining Order, *Zynga, Inc. v. Vostu USA, Inc.*, No. 11-cv-02959, ECF No. 60

10

(N.D. Cal. Aug. 11, 2011) (Ex. 1 to this Memorandum) ("*Zynga* TRO Order");[3] *see also*

11

*Weyerhaeuser Co. v. Novae Syndicate 2007*, No. C18-0585JLR, 2018 WL 2120415, at *2 (W.D.

12

Wash. May 7, 2018); *Fellowes, Inc. v. Changzhou Xinrui Fellowes Office Equip. Co.*, No. 11 C

13

6289, 2012 WL 3544841, at *1 (N.D. Ill. Aug. 16, 2012), *vacated on other grounds*, 759 F.3d 787

14

(7th Cir. 2014); *Pittsburgh-Corning Corp. v. Askewe*, 823 S.W.2d 759, 760 (Tex. App. 1992); *cf.*

15

*H-D Mich., LLC v. Hellenic Duty Free Shops S.A.*, No. 11-CV-00742, 2012 WL 404895, at *2, *5

16

(E.D. Wis. Feb. 7, 2012) (granting emergency motion for anti-suit injunction to enforce forum-

17

selection clause), *aff'd*, 694 F.3d 827 (7th Cir. 2012); *see also In re Red Dot Bldg. Sys., Inc.*, No.

18

13-15-00608-CV, 2015 WL 9487554, at *1 (Tex. App. Dec. 29, 2015) (per curiam) (granting ex

19

parte temporary restraining order to halt parallel state proceeding); *Am. Emp'rs' Ins. v. Elf*

20

*Atochem N. Am., Inc.*, 656 A.2d 58, 62 (N.J. Super. Ct. App. Div. 1995) (same).

21

   The Court should, on an ex parte basis, enter a temporary restraining order enjoining

22

Defendants from litigating against Lockheed Martin outside of United States courts for three

23

reasons.  *First*, this case presents one of the rare occasions in which ex parte consideration is

24

25

---

[3] After full briefing, the *Zynga* court dissolved the temporary restraining order and denied the

26

application for a preliminary injunction primarily because it concluded the Ninth Circuit's anti-
suit injunction test had not been met where the domestic and foreign courts were considering

27

different issues—the copyright protections of separate sovereigns.  816 F. Supp. 2d 824, 829–30
(N.D. Cal. 2011).  In contrast, Lockheed Martin easily satisfies the Ninth Circuit's standard for

28

anti-suit injunctions, as we demonstrate below.  *See infra* pp.16–20.

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPP. OF
APPL. FOR TEMPORARY RESTRAINING ORDER

appropriate.  Defendants are likely to file suit in Australia imminently, and to seek ex parte relief preventing Lockheed Martin from challenging that court's jurisdiction when they do so.  *Second*, Defendants are equitably estopped from disavowing their obligations under the Shareholders Agreement given Lockheed Martin's proximity to the subject matter of that agreement and the transactions it contemplates.  Just as Defendants cannot sue Collinear outside the United States for alleged misrepresentations related to their investment in Collinear, they cannot sue Lockheed Martin outside the United States in relation to the same investment on a theory that its personnel assisted Collinear in any alleged misrepresentations.  And, *third*, the proper course when a party has threatened litigation in violation of a forum-selection agreement to which it is bound is for a court with jurisdiction under that agreement to enjoin the party from proceeding in an improper forum.  Lockheed Martin satisfies the Ninth Circuit's standard for seeking an anti-suit injunction and, to the extent they remain relevant, the traditional factors for a TRO.

In short, granting Lockheed Martin the relief requested is the only way to protect a United States court's ability to apply and interpret forum-selection clauses that dictate that litigation be brought in United States courts.  The Court should grant Lockheed Martin's request for a TRO.

A.    **The Court Should Hear Lockheed Martin's Application on an Ex Parte Basis and Without Notice to Defendants.**

Although the category of cases "in which ex parte orders are proper" is "very narrow," this case falls squarely within the category.  *Shutterfly, Inc. v. ForeverArts, Inc.*, No. CR 12-3671 SI, 2012 WL 2911887, at *4 (N.D. Cal. July 13, 2012) (quoting *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006)).

That is because there is a significant risk that "notice to the defendant would render fruitless the further prosecution of the action."  *Reno Air Racing*, 452 F.3d at 1131 (internal quotation marks omitted).  As described in Lockheed Martin's Verified Complaint for Declaratory Judgment and Injunctive Relief, Defendants have repeatedly threatened to sue Lockheed Martin in Australia in violation of the forum-selection clauses to which they agreed.  *See* Verified Compl. ¶¶ 4–5, 31.  Now that negotiations between Lockheed Martin and Defendants have failed,

8

*id.* ¶¶ 36–39, there is every reason to think that Defendants will go through with that threat and sue Lockheed Martin in Australia.

When they do, Defendants are likely to seek ex parte relief enjoining Lockheed Martin from asserting in a U.S. court that Defendants are bound by the forum-selection clauses that they signed.  Before taking the bench, one of the most prominent jurists in Australia—the President of the New South Wales Court of Appeal[4]—wrote a treatise (with a forward  by the former Chief Justice of the Australia Supreme Court) that addresses how to proceed when one is "proposing to commence [litigation] other than in a contractually stipulated forum."  Ex. G § 4.139.  President Bell stated that "well-advised litigants" would "accompany the filing of their suit with an application, typically *ex parte*, for an anti-anti-suit injunction ordering the defendant to those proceedings not to seek to thwart them indirectly by seeking, in another forum, an anti-suit injunction."  *Id.*

Accordingly, providing notice risks "render fruitless the further prosecution of the action" in two ways.  The first is that Defendants are likely to seek to enjoin Lockheed Martin from seeking an anti-suit injunction in Australia if they learn of the existence of this proceeding.  Because an anti-suit injunction is the principal form of relief Lockheed Martin seeks, a driving purpose of the litigation would become "fruitless" if Defendants receive notice.  *Reno Air Racing*, 452 F.3d at 1131.  Indeed, in one case, while a motion for preliminary injunction was pending in a United States court (the Delaware Court of Chancery) seeking an anti-suit injunction to enforce an exclusive Delaware forum-selection clause, Australian lead counsel sought and obtained an ex parte anti-anti-suit injunction in the Royal Court of Guernsey precluding the parties seeking to enforce the Delaware clause from continuing with those proceedings.  Oct. 7, 2011 Order of the Royal Court of Guernsey (Ex. 2).  Accordingly, without the TRO, a request for preliminary injunction could not by itself prevent the further litigation of the action from becoming fruitless.

---

[4] The President of the New South Wales Court of Appeal is essentially the chief judge of the appellate court for the state of New South Wales, itself the largest state in Australia and the state containing Australia's largest city (Sydney).

9

The second way notice could frustrate the relief sought is tied to the purpose of anti-suit injunctions, which is to ensure compliance with forum-selection clauses.  Litigating in an improper foreign forum is itself a form of irreparable harm that merits injunctive relief. *Interdigital Tech. Corp. v. Pegatron Corp.*, No. 15-CV-02584, 2015 WL 3958257, at *9 (N.D. Cal. June 29, 2015).  That is because "[a]lthough a foreign court might eventually agree that a forum selection clause controls, there is no guarantee that such a resolution would be reached in a timely fashion or at all." *Applied Med. Distrib.*, 587 F.3d at 919.  Here, permitting Lockheed Martin to seek interim relief without notice would allow it to avoid exposure to the irreparable harm of litigating in an improper foreign forum.

Thus, the only way "to preserve the status quo and prevent irreparable harm before a preliminary injunction hearing may be held" is for Lockheed Martin to be heard on an ex parte basis. *Wofford v. Hamilton*, No. C 13-2467 SBA, 2013 WL 2456582, at *1 (N.D. Cal. June 6, 2013); *see Reno Air Racing*, 452 F.3d at 1131 (goal of ex parte TRO proceedings is to temporarily maintain the status quo).  For the same reasons, good cause exists for purposes of Civil Local Rule 65-1(b) for Lockheed Martin to not provide notice to Defendants of its application for ex parte relief.  As noted above, Lockheed Martin seeks to proceed ex parte not to prevent Defendants from being heard in this Court.  Rather, it seeks to proceed ex parte to prevent Defendants from taking actions in another, foreign court that would deprive Lockheed Martin of protections to which Defendants bound themselves as Collinear shareholders.[5]

We now turn to Lockheed Martin's right to avail itself of those protections.

---

[5] This reasoning is repeated in a certification of counsel explaining why notice is not being provided, as contemplated by Rule 65(b) of the Federal Rules of Civil Procedure.  That rule also requires specific facts in a verified complaint showing that immediate and irreparable injury will occur.  *See* Fed. R. Civ. P. 65(b).  That requirement is met by the allegations in Lockheed Martin's Verified Complaint, *see id.* ¶¶ 40, 52, and are identified above and later in the memorandum.  *See supra* pp. 5–6 & *infra* pp. 20–22.

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPP. OF
APPL. FOR TEMPORARY RESTRAINING ORDER

### B.   Defendants Are Estopped from Bringing Any Claims Arising from Their Equity Investment in Collinear Outside of a United States Court.

Defendants' threatened claims against Lockheed Martin must be brought in a United States court.  The claims arise from and relate to Defendants' purchase of Collinear stock under the terms of the Shareholders Agreement.  The Shareholders Agreement, in turn, contains a clear forum-selection clause, specifying that such claims must be brought in an action in a United States court. Lockheed Martin is closely related to the Shareholders Agreement and, on Defendants' telling, to their decision to invest.  Because Defendants' claims are dependent upon their purchase of shares pursuant to that agreement, Defendants are estopped from avoiding the forum-selection clause and bringing suit against Lockheed Martin outside of the United States.

The purpose of forum-selection clauses like Section 4.11 of the Shareholders Agreement is to "dispel[] any confusion about where suits arising from the [agreement] must be brought and defended."  *E. & J. Gallo*, 446 F.3d at 992 (quoting *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593-94 (1991)).  Under the Shareholders Agreement, "[e]ach party" "irrevocably and unconditionally submits to the personal jurisdiction of *the federal and state courts of the United States* in each and every jurisdiction where venue is proper," and "agrees that any actions or proceedings arising in connection with this Agreement or the transactions contemplated by this Agreement *shall be brought, tried and determined only in such courts*."  Ex. A § 4.11(a), (c) (emphases added).  Not only has each Defendant agreed that any such actions or proceedings shall be brought only in U.S. courts, each has specifically agreed that it "*will not* bring any action relating to this Agreement or the transactions contemplated by this Agreement *in any court other than the aforesaid courts*."  *Id.* § 4.11(e) (emphases added).

The Shareholders Agreement also contains a choice-of-law provision, noting that the Agreement itself is to be "governed by, and construed and interpreted in accordance with, the Laws of the State of Delaware," and that the "rights and duties of the parties, whether arising in Law or in equity, in contract, *tort* or otherwise," shall also be construed under Delaware law.  *Id.* § 4.9 (emphasis added).  Accordingly, any disputes as to the scope of the forum-selection clause should be resolved under Delaware law.  *See E. & J. Gallo*, 446 F.3d at 994 (holding that because

11

1    the contract contains a California choice-of-law clause, the forum-selection clause should be

2    interpreted under California law); *Ashall Homes Ltd. v. ROK Entm't Grp. Inc.*, 992 A.2d 1239,

3    1245 (Del. Ch. 2010) ("When a contract contains a forum selection clause, this court will interpret

4    the forum selection clause in accordance with the law chosen to govern the contract.").  And,

5    although Lockheed Martin does not request that the Court order the application of Delaware law at

6    this TRO-stage, it is clear that any claims that Defendants may bring will be governed by

7    Delaware law as well.

8            ### 1.   Defendants Agreed that Claims Like Theirs Should Be Brought in a United States Court.

9            Defendants' threatened claims fall within the scope of the forum-selection clause and

10   therefore must be brought in a United States court.  The forum-selection clause applies to "any

11   actions or proceedings *arising in connection with this Agreement or the transactions contemplated*

12   *by this Agreement*."  Ex. A § 4.11(c) (emphasis added).  Defendants' theory is that they became

13   Collinear shareholders, and thus entered into the Shareholders Agreement, because of alleged

14   misrepresentations.  So their claim "aris[es] in connection with" the Shareholders Agreement.

15   Moreover, their purchase of shares, as part of a capital raising effort by Collinear, was a

16   "transaction contemplated by" the Shareholders Agreement, which acknowledges that Collinear

17   could offer additional shares to new investors.  *See id.* §§ 3.3, 4.4.

18          Under Delaware law, which governs the scope of the Shareholders Agreement as well as

19   this dispute, *see id.* § 4.11, a clause as broad as this one clearly covers any tort claims Defendants

20   may assert.  The forum-selection clause in the Shareholders Agreement is a paradigmatic broad

21   forum-selection clause:  The Clause "expressly cover[s] . . . all claims . . . that 'arise out of' or

22   'relate to' a contract."  *ASDC Holdings, LLC v. Richard J. Malouf 2008 All Smiles Grantor*

23   *Retained Annuity Tr.*, No. 6562-VCP, 2011 WL 4552508, at *5 (Del. Ch. Sept. 14, 2011)

24   (defining broad forum-selection clause); *see also Aveta Inc. v. Cavallieri*, 23 A.3d 157, 166 (Del.

25   Ch. 2010).  Furthermore, the Clause expressly encompasses "any . . . proceeding" with respect to

26   the Agreement.  *Carlyle Inv. Mgmt. L.L.C. v. Nat'l Indus. Grp. (Holding)*, No. 5527-CS, 2012 WL

27   4847089, at *12 n.103 (Del. Ch. Oct. 11, 2012) (alteration in original) (internal quotation marks

28

12

omitted), *aff'd*, 67 A.3d 373 (Del. 2013) (en banc).  The "use of the word 'any'" in a forum-selection clause "'connotes *all-encompassing inclusion*'" in the scope of the Clause.  *Ashall Homes*, 992 A.2d at 1250 (emphasis added) (quoting *Prestancia Mgmt. Grp., Inc. v. Va. Heritage Found., II LLC*, No. Civ.A. 1032-S, 2005 WL 1364616, at *7 (Del. Ch. May 27, 2005)).

A broad forum-selection clause therefore "appl[ies] not only to claims dealing directly with the terms of the contract itself, but also to 'any issues that touch on contract rights or contract performance.'"  *ASDC*, 2011 WL 4552508, at *5 (citation omitted).  In applying this principle, courts routinely hold that, under Delaware law, broad forum-selection clauses "can be applied not only to contract-based claims but also [to] *tort claims arising out of, or depending upon, the contractual relationship in question*."  *Ashall Homes*, 992 A.2d 1239 at 1245 (emphasis added).

Because Defendants' claims involve their "initial decision to invest" in Collinear, the claims are "related to" the Shareholders Agreement, and fall under the forum-selection clause.  That was also clearly the intent of the Shareholders Agreement, because the Agreement's choice-of-law provision uses the same broad "arising under" formulation, in that it applies to "any claim, controversy or dispute arising under [the Shareholders Agreement] or related thereto, the relationship of the parties, and/or the interpretation and enforcement of the rights and duties of the parties."  Shareholders Agreement, Ex. A § 4.9.  And it then goes on to note that the scope of such claims include all claims "arising in Law or in equity, in *contract, tort or otherwise*."  *Id.* (emphasis added).  Any tort-like claims Defendants wish to assert arising out of their decision to buy stock in Collinear fall under the forum-selection clause in the Collinear Shareholders Agreement.

### 2. Defendants Must Comply with the Forum-Selection Clause Regardless of Whether Lockheed Martin Was a Signatory to the Shareholders Agreement.

That Lockheed Martin was not a signatory to the underlying Shareholders Agreement does not change that Defendants are bound by the Shareholders Agreement's forum-selection clause.  Lockheed Martin is a "non-signatory who is being sued by a signatory" to the Shareholders Agreement.  *Aviation W. Charters, LLC v. Freer*, C.A. No. N14C-09-271 WCC CCLD, 2015 WL

13

5138285, at *5 (Del. Super. Ct. July 2, 2015).  "It makes sense that a signatory to an agreement, who has endorsed and consented to be bound by such agreement, should generally be bound by a forum selection clause in that agreement." *Id.*  Accordingly, under Delaware law, a non-signatory like Lockheed Martin "may reasonably assert the forum selection clause should be enforced to require the signatory to only bring suit in the forum selected." *Id.*

That is, Delaware law gives "standing" to a non-signatory "to invoke a forum selection clause when it is 'closely related to one of the signatories such that the non-party's enforcement of the clause is foreseeable by virtue of the relationship between the signatory and the party sought to be bound.'" *Carlyle Inv. Mgmt. L.L.C. v. Moonmouth Co. SA*, 779 F.3d 214, 219 (3d Cir. 2015) (quoting *Ashall Homes*, 992 A.2d at 1249).[6]  A non-signatory is closely related to the signatories, and the enforcement of the forum-selection clause therefore foreseeable, where the non-signatory has a "clear and significant connection to the subject matter of the agreement." *iModules Software, Inc. v. Essenza, Software, Inc.*, No. 2017-0733-JTL, 2017 WL 6596880, at *3 (Del. Ch. Dec. 22, 2017).[7]

Put in the terms of the Ninth Circuit, whenever the conduct at issue "is closely related to the contractual relationship, 'a range of transaction participants, parties and non-parties, should benefit from and be subject to forum selection clauses.'" *Holland Am. Line Inc. v. Wartsila N.*

---

[6] The test for whether a non-signatory can bind or be bound by a forum-selection clause also inquires as to (1) whether the forum-selection clause is valid, and (2) whether the claims at issue arise from or relate to the underlying agreement. *Hadley v. Shaffer*, No. Civ.A. 99-144-JJF, 2003 WL 21960406, at *4 (D. Del. Aug. 12, 2003).  Forum-selection clauses are presumptively valid under Delaware law, and there is no evidence that the Shareholders Agreement's forum-selection clause is otherwise invalid as the result of fraud or overreaching. *Id.* (citing *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190, 202 (3d Cir. 1983)).  And the claims at issue arise from and relate to the Shareholders Agreement for the reasons stated *supra*.

[7] A non-signatory's enforcement of a forum-selection clause due to its close relationship to the Agreement is a form of equitable estoppel, and therefore entirely distinct from a non-signatory's enforcement of a forum-selection clause as a third-party beneficiary. *iModules Software Inc.*, 2017 WL 6596880, at *2 ("[T]he 'closely related' concept expands the availability of the equitable estoppel doctrine to encompass parties who would not technically meet the definition of third-party beneficiaries.").  Accordingly, whether or not the underlying agreement excludes or allows third-party beneficiaries is irrelevant to the estoppel question. *Capital Grp. Cos. v. Armour*, No. Civ.A. 422-N, 2004 WL 2521295, at *6 (Del. Ch. Oct. 29, 2004) (doctrine of equitable estoppel applies to apply forum-selection clause to dispute with non-signatory even where agreement "expressly excludes third-party beneficiaries").

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPP. OF APPL. FOR TEMPORARY RESTRAINING ORDER

1   *Am., Inc.*, 485 F.3d 450, 456 (9th Cir. 2007) (quoting *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858

2   F.2d 509, 514 n.5 (9th Cir. 1988)).  A non-signatory is considered "closely related" when the non-

3   signatory's "conduct . . . is tied to [the] contract."  *Holland*, 485 F.3d at 456.  This relationship is

4   particularly pronounced where the non-signatory gave or received technical assistance in

5   developing a product.  *See Prods. & Ventures Int'l v. Axus Stationary (Shanghai) Ltd.*, No. 16-cv-

6   00669-YGR, 2017 WL 201703, at *7 (N.D. Cal. Jan. 18, 2017); *Graham Tech. Sols., Inc. v.*

7   *Thinking Pictures, Inc.*, 949 F. Supp. 1427, 1429–30, 1434 (N.D. Cal. 1997).

8        Lockheed Martin's connections to the Shareholders Agreement and underlying

9   transactions are clear and significant.  According to Defendants, one reason they became parties to

10   the Shareholders Agreement was Lockheed Martin's conduct.  They allege that Lockheed Martin

11   engineers assisted Collinear in discussions with and demonstrations to investors that resulted in

12   purchases of stock under and in connection with the Shareholders Agreement and provided

13   information to Collinear that was later provided to investors for the purpose of encouraging stock

14   sales pursuant to the Shareholders Agreement.  Defendants invested in Collinear with the

15   understanding that Lockheed Martin was or would be a contractual counterparty to Collinear that

16   assisted in developing the high-capacity wireless transmission system.

17        Given Lockheed Martin's close relationship to that Agreement, it was foreseeable to

18   Defendants that Lockheed Martin would seek to enforce the forum-selection clause as to any

19   dispute arising out of their equity investments under that Agreement.  Allowing Lockheed Martin

20   to do so is the only sensible solution.  The forum-selection clause would clearly apply to litigation

21   between Defendants and Collinear, requiring that litigation to take place in the United States.  The

22   United States is also the location of Collinear's documents, which would be central to any dispute

23   regarding Defendants' diligence in investing in Collinear.  The prospect of dual litigations with

24   Collinear's actions being litigated in the United States and Lockheed Martin's in Australia, with

25   each case requiring the other company's participation as a witness or as the subject of third-party

26   discovery, would be impractical and wasteful.  The "closely related" test is designed to eliminate

27   this ungainly possibility:  "'Giving standing to all closely related entities'" to a transaction to

28

enforce a forum-selection clause "'honors general principles of judicial economy by making all parties closely allied to the contractual relationship accountable in the same forum, thereby abating a proliferation of actions and inconsistent rulings.'"  *Simpkins v. S. Wine & Spirits of Am., Inc.*, No. C-10-02353-EDL, 2010 WL 3155844, at *5 (N.D. Cal. Aug. 9, 2010) (quoting *Bugna v. Fike*, 80 Cal. App. 4th 229, 233–34 (Cal. Ct. App. 2000)).

Defendants should therefore be equitably estopped from avoiding compliance with the forum-selection clause and must therefore litigate their threatened claims in a United States court.

### C.  Lockheed Martin Is Entitled to a Temporary Restraining Order and Anti-Suit Injunction To Enforce the Forum-Selection Clause.

This Court has inherent equitable powers "to restrain a party subject to its jurisdiction from proceeding in a foreign court in circumstances that are unjust."  *E. & J. Gallo*, 446 F.3d at 989. Such relief is particularly warranted where, as here, "'the action of a litigant in another forum threatens to paralyze the jurisdiction of the court.'"  *Id.* at 995 (quoting *Laker Airways Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909, 927 (D.C. Cir. 1984)).

To obtain a foreign anti-suit injunction, the movant does not need to satisfy the traditional preliminary-injunction requirements.  *Id.* at 991.  "Rather, [the movant] need only demonstrate that the factors specific to an anti-suit injunction weigh in favor of granting the injunction."  *Id.* This three-part inquiry requires the Court to determine:  (1) "whether or not the parties and the issues are the same, and whether or not the first action is dispositive of the action to be enjoined"; (2) whether the foreign litigation would "frustrate a policy of the forum issuing the injunction"; and (3) "whether [the injunction's] impact on comity [is] tolerable."  *Applied Med. Distrib.*, 587 F.3d at 915, 918, 919 (quoting *E. & J. Gallo*, 446 F.3d at 991, 992, 994); *see also E. & J. Gallo*, 446 F.3d at 991; *Microsoft Corp. v. Motorola, Inc.*, 696 F.3d 872, 881 (9th Cir. 2012) (Microsoft II) (applying only the *E. & J. Gallo* test to affirm the anti-suit injunction issued below).  Because "[t]he standard for issuing a TRO is identical to the standard for issuing a preliminary injunction," *Brinker v. JP Morgan Chase, N.A.*, No. 13-CV-01344-LHK, 2013 WL 7798675, at *2 (N.D. Cal. May 17, 2013), the same factors used to determine whether a foreign anti-suit injunction should

1    issue should be used to assess whether a TRO is appropriate in this case.  Lockheed Martin readily

2    satisfies each of these criteria.  *See infra* parts C.1–C.3, pp. 17–20.

3            That said, while recognizing that Ninth Circuit and district authority supports imposing

4    anti-suit injunctive relief without consideration of the traditional factors articulated in *Winter v.*

5    *Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008), some courts in this District have

6    expressed uncertainty as to whether a party seeking a preliminary anti-suit injunction or TRO must

7    demonstrate compliance with some of the traditional factors.  *See Interdigital*, 2015 WL 3958257,

8    at *8 (noting that the Ninth Circuit only considers the anti-suit injunction factors and not the

9    traditional factors, but viewing the law as unclear); *Zynga, Inc. v. Vostu USA, Inc.*, 816 F. Supp.

10   2d 824, 828 n.4 (N.D. Cal. 2011) (similar).  Specifically, those courts, while agreeing that the

11   Ninth Circuit's anti-suit injunction test definitely displaces an inquiry into the likelihood of

12   success on the merits, have nevertheless inquired into whether a party seeking an anti-suit

13   injunction also must meet the other requirements for relief (irreparable harm, balance of the

14   hardships, and public interest).  *See Interdigital*, 2015 WL 3958257, at *8; *Zynga*, 816 F. Supp. 2d

15   at 828 n.4; *see also Weyerhaeuser Co.*, 2018 WL 2120415, at *1 n.1.  But Lockheed Martin makes

16   that showing as well, as identified in subpart C.4.  *See infra*.  Most critically, Lockheed Martin

17   faces irreparable harm should Defendants initiate litigation abroad, as the relief they seek will

18   likely include enjoining Lockheed Martin from further pursuing this action.

                    **1.      This Action Is Dispositive of Any Action Against Lockheed Martin
                              Abroad.**

19

20          Lockheed Martin satisfies the first step of the anti-suit injunction inquiry: The parties and

21   issues in this action are the same as those in the imminent foreign litigation it seeks to enjoin.

22          That the parties are the same is straightforward.  Defendants named in this action are the

23   parties that, through their representative, have made written and oral threats to initiate their own

24   action against Lockheed Martin in Australia.

25          As to whether the issues are the same, the Ninth Circuit has repeatedly emphasized that

26   this is a "functional inquiry," and "not [] a technical or formal" one.  *Applied Med. Distrib.*, 587

27   F.3d at 915 (reversing district court's denial of foreign anti-suit injunction where the issues were

28

                                                    17

"functionally the same" though not identical); *Microsoft Corp. v. Motorola, Inc.*, 696 F.3d 872, 882–83 (9th Cir. 2012) (affirming grant of foreign anti-suit injunction). In particular, where the movant seeks an anti-suit injunction in order to enforce a valid forum-selection clause, "requiring issues to be precisely and verbally identical would lead to counterproductive, and perhaps unintended, results" because a party could avoid the forum-selection clause "simply by waiting until a local suit is filed, and then file a foreign action that, despite being easily disposed of by resolution of the local action, is in some way not identical in form." *Applied Med. Distrib.*, 587 F.3d at 915. To avoid such a result, in determining "whether the issues are the same," the Ninth Circuit asks the functional question of whether "all the issues in the foreign action fall under the forum selection clause and *can* be resolved in the local action." *Id.* (emphasis added).

That standard is met here. Any issues that Defendants would seek to litigate against Lockheed Martin in a foreign court would fall under the forum-selection clause in the Shareholders Agreements and "can be resolved" in this action. More specifically, "the present action is dispositive of the [foreign] action" because any claims that could form the basis for a foreign action would "relat[e] to . . . transactions contemplated by the Shareholders Agreement" such that they would be subject to under the forum-selection clause, Ex. A § 4.11; they "therefore must be disposed of in the [United States] forum if at all." *Applied Med. Distrib.*, 587 F.3d at 916. This action, moreover, not only "*can*" resolve any claims Defendants would bring, but the declaratory relief sought by Lockheed Martin means that it *will*. Lockheed Martin seeks a declaratory judgment that Defendants are bound by the forum-selection provision in the Shareholders Agreement. That defeats jurisdiction in an Australian court. And Lockheed Martin seeks a declaratory judgment that Defendants are bound by the choice-of-law provision in the Shareholders Agreement. That defeats the application of Australian law.

Although Defendants have not yet filed an action abroad, this is no bar to declaratory and injunctive relief. The courts routinely grant anti-suit injunction relief against prospective foreign litigation. *See Applied Med. Distrib.*, 587 F.3d at 912 (holding it was an abuse of discretion for the district court to have denied injunctive relief to bar all non-California litigation, rather than

1    merely the particular Belgian litigation that the defendant had already commenced); *see, e.g.*,

2    *Cisco Sys., Inc. v. GTEC*, No. 10-CV-04960, 2011 WL 13253336, at *3 (N.D. Cal. Sept. 27, 2011)

3    (enjoining party from "initiating any subsequent lawsuit . . . except as provided for in the parties'

4    contract" (internal quotation marks omitted)).

5              **2.      Defendants' Initiation of a Suit in a Foreign Forum Would Frustrate the**
               **United States Courts' Policy of Enforcing Forum-Selection Clauses.**
6
7              Lockheed Martin satisfies the second step of the anti-suit injunction test, which requires an

8    assessment of "whether the foreign litigation would frustrate a policy of the forum issuing the

9    injunction . . . or whether any of the other *Unterweser* factors apply." *Microsoft*, 696 F.3d at 885

10   (internal quotation marks omitted).[8]  Defendants' threatened litigation would frustrate what the

11   Ninth Circuit has consistently described as the U.S. courts' "strong policy favoring robust forum

12   selection clauses." *Applied Med. Distrib.*, 587 F.3d at 918–19; *accord E. & J. Gallo*, 446 F.3d at

13   992; *Interdigital*, 2015 WL 3958257, at *7.  Accordingly, Ninth Circuit precedent instructs that

14   courts should grant anti-suit injunctions that threaten forum-selection clauses, given that "[a]nti-

15   suit injunctions may be the only viable way to effectuate valid forum selection clauses." *Applied*

16   *Med. Distrib.*, 587 F.3d at 919.  Indeed, here, granting the relief is the only way to ensure that a

17   United States court decides the application of the forum-selection clause.

18             The policy in favor of forum-selection clauses is particularly threatened by this dispute, as

19   it involves a party that did not sign the contract at issue.  U.S. law establishes the benefits to

20   stability and predictability in business transactions that is afforded by allowing closely related

21   non-signatories to use forum-selection clauses.  *See supra* part B, pp.13–15.  That law "would be

22   impermissibly and improvidently jeopardized" were the Court to not allow an anti-suit injunction

23   here.  *Applied Med. Distrib.*, 587 F.3d at 919.  As explained above, although Lockheed Martin is

24   ───────────────
     [8] Under the disjunctive list of *Unterweser* factors, first articulated by the Fifth Circuit and since
     adopted in the Ninth Circuit, foreign litigation may be enjoined when it meets any one of the
25   following conditions: it would "(1) frustrate a policy of the forum issuing the injunction; (2) be
     vexatious or oppressive; (3) threaten the issuing courts in rem or quasi in rem jurisdiction; or (4)
26   where the proceedings prejudice other equitable considerations."  *Seattle Totems*, 652 F.2d at 855
     (citing *Zapata Off-shore Co. v. M/S Bremen (In re Unterweser Reederei Gmbh)*, 428 F.2d 888 (5th
27   Cir. 1970), *aff'd on rehearing en banc*, 446 F.2d 907 (1971)).  Lockheed Martin need only meet
     one condition to obtain an anti-suit injunction.  *E. & J. Gallo*, 446 F.3d at 990.

28

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPP. OF
APPL. FOR TEMPORARY RESTRAINING ORDER

not a signatory to the Shareholders Agreement, as a closely-related party facing the threat of litigation with respect to claims that unquestionably arise "in connection with" or "relate[] to" transactions contemplated by the Agreement, Lockheed Martin has standing to avail itself of the broadly worded forum-selection clause.  *See Moonmouth Co. SA*, 779 F.3d at 217, 219; *ASDC*, 2011 WL 4552508 at *2.  Any claim that Defendants might seek to bring against Lockheed Martin in connection with its work for Collinear, whether brought in contract or tort or under Australian statutes, thus clearly falls within the clause's wide ambit, and any attempt by Defendants to force litigation of those claims in Australia notwithstanding the forum-selection clause would constitute a frustration of this jurisdiction's well-established policy of enforcing such valid forum-selection clauses.  *See Applied Med. Distrib.*, 587 F.3d at 914 (rejecting argument that Belgian action does not frustrate California policy of enforcing forum-selection clauses where claims arise out of a Belgian statute because the claims arose out of the agreement at issue and could be litigated only in California); *E. & J. Gallo*, 446 F.3d at 993 (frustration requirement met where an anti-suit injunction "is the only way [movant] can effectively enforce the forum selection clause").

### 3.    This Dispute Between Private Entities Does Not Impact Comity.

The final anti-suit injunction factor requires determining that "the impact on comity would be tolerable."  *E. & J. Gallo*, 446 F.3d at 994.  This requirement is easily met here because enforcement of a valid forum-selection clause in a dispute between private parties by way of an anti-suit injunction clause "'d[oes] not implicate comity at all.'"  *See Applied Med. Distrib.*, 587 F.3d at 920 (quoting *E. & J. Gallo*, 446 F.3d at 994); *Interdigital*, 2015 WL 3958257, at *8.  That is because the injunction runs against Defendants, not the Australian courts.

In fact, this is a matter where the *denial* of an anti-suit injunction would negatively affect comity.  In this dispute, "'there is no public international issue raised, a foreign government is not involved in the litigation, and the litigation involves private parties concerning disputes arising out of a contract.'"  *Interdigital*, 2015 WL 3958257, at *8 (quoting *Applied Med. Distrib.*, 587 F.3d at 921).  In such instances, "allowing foreign suits to proceed . . . would seriously *harm* international

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPP. OF
APPL. FOR TEMPORARY RESTRAINING ORDER

comity." *Id.* (emphasis added). Granting declaratory and injunctive relief in this case would have

a tolerable impact on comity; at best, it may have a salutary one.

### 4.   A Temporary Restraining Order Should Be Ordered Under the Traditional *Winter* Factors to the Extent They Remain Relevant.

As noted above, *see supra* pp. 16–17, it is unclear whether a party seeking an anti-suit

TRO or preliminary injunction must satisfy any of the traditional factors for preliminary relief.

The courts that have considered any of the traditional factors have focused on the following: (a)

that there is a likelihood of irreparable harm to the moving party in the absence of preliminary

relief; (b) that the balance of equities tips in the moving party's favor; and (c) that an injunction is

in the public interest. *Winter*, 555 U.S. at 20;[9] *see Interdigital*, 2015 WL 3958257, at *8; *Zynga*,

816 F. Supp. 2d at 828 n.4; *Zynga* TRO (Ex. 1) at 2–4; *Weyerhaeuser Co.*, 2018 WL 2120415, at

*1.[10] For the reasons identified below, Lockheed Martin satisfies those factors.

a. As described above, *see supra* pp. 8–10, Lockheed Martin faces immediate and

irreparable harm if Defendants are not enjoined from filing suit in Australia. Being forced to

litigate in a foreign forum in violation of a valid forum-selection clause is itself irreparable harm.

*Interdigital*, 2015 WL 3958257, at *8. But Lockheed Martin also faces a more pernicious risk of

irreparable harm in the form of an injunction limiting it from seeking injunctive relief from this

Court. Australian authority suggests parties like Defendants seek such injunctions. *See* Bell,

*Forum Shopping and Venue in Transnational Litigation* (Ex. G) § 4.139 (advising litigants

seeking to avoid "a contractually stipulated forum" to initiate their suits by filing with their

complaint "an application, typically *ex parte*, for an anti-anti-suit injunction ordering the

defendant to those proceedings not to seek to thwart them indirectly by seeking, in another forum,

---

[9] The Ninth Circuit employs a sliding-scale variant of the standard, under which a strong showing on the balance-of-hardships factor can make up the difference for other factors. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134–35 (9th Cir. 2011).

[10] The *Winter* standard usually also inquires into the likelihood of success on the merits. The Ninth Circuit has made clear that this factor is irrelevant when considering a preliminary request for an anti-suit injunction. *See, e.g.*, *E. & J. Gallo*, 446 F.3d at 991. Lockheed Martin is, however, likely to prevail on the merits. As demonstrated above, *see supra* part B, pp. 11–13, the valid forum-selection clause in Defendants' Shareholders' Agreement binds them to litigate in the United States any claims arising out of Defendants' investments in Collinear.

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPP. OF
APPL. FOR TEMPORARY RESTRAINING ORDER

an anti-suit injunction").  Such an injunction would prevent Lockheed Martin from fully litigating the appropriate forum for any litigation with Defendants in the forum where Defendants agreed such disputes should be heard.  And, more perniciously, it effectively prevents any United States court from determining the applicability of a forum-selection clause that provides for exclusive jurisdiction in United States courts and that is to be interpreted under the law of a United States jurisdiction (Delaware).

   b. The "balance of hardships" also favors relief.  If a TRO is issued, Defendants are only temporarily delayed from bringing their action while the Court determines whether to grant a preliminary injunction.  *See, e.g.*, *Zynga* TRO Order (Ex. 1) at 3.  And if the Court grants a preliminary injunction, Defendants are not burdened either.  They are only required to litigate their claims in the forum to which they agreed in the Shareholders Agreement.  In fact, Defendants agreed to litigate claims in U.S. courts, and California courts in particular, in the Note & Warrant Agreement and Voting Agreement as well.  *See* Ex. D § 9.2; Ex. E § 6.16.  Defendants and Collinear chose California for a reason.  It is where Collinear is headquartered.  And it is also where much of Defendants' due diligence took place before they invested in Collinear.

   By contrast, Lockheed Martin is substantially burdened by the threat of litigation in Australia.  Lockheed Martin risks adjudication by courts to which it did not affirmatively consent, and it risks those courts enjoining it from fully litigating its ability to avail itself of the forum-selection clause.

   c. The final factor, regarding the public interest, accordingly plays a comparatively small role in the analysis.  *See Interdigital*, 2015 WL 3958257, at \*10; *Zynga* TRO Order (Ex. 1) at 6.  To the extent the Court considers the factor, however, it favors granting the TRO.  The Ninth Circuit has recognized the U.S. courts' public policy in favor of enforcing forum-selection clauses.  *See, e.g.*, *Applied Med. Distrib.*, 587 F.3d at 919.  Here, that policy is at risk of being frustrated by Defendants' efforts to evade the clauses to which they agreed.

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPP. OF APPL. FOR TEMPORARY RESTRAINING ORDER

# CONCLUSION

For the foregoing reasons, Lockheed Martin requests that this Court grant its Ex Parte Application for Temporary Restraining Order Without Notice and Order to Show Cause Why Preliminary Injunction Should Not Issue.  Defendants should be enjoined from initiating any action in a foreign forum or seeking relief abroad that would render a nullity the forum-selection clause that properly governs any claim Defendants might bring against Lockheed Martin.

Dated: July 16, 2019

Respectfully submitted,

By: /s/ Christine Peek

Christine Peek (234573)
James McManis (40958)
William Faulkner (83385)
**McMANIS FAULKNER**
a Professional Corporation
50 West San Fernando Street, 10th Floor
San Jose, California 95113
Telephone:	(408) 279-8700
Facsimile:	(408) 279-3244
E-mail:	cpeek@mcmanislaw.com

Robert A. Van Kirk (*pro hac vice* appl. forthcoming)
John S. Williams (*pro hac vice* appl. forthcoming)
**WILLIAMS & CONNOLLY LLP**
725 12th Street, N.W.
Washington, D.C. 20005
Telephone:	(202) 434-5000
Facsimile:	(202) 434-5029
E-mail:	rvankirk@wc.com
	jwilliams@wc.com

*Attorneys for Plaintiff*
*Lockheed Martin Corporation*

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPP. OF APPL. FOR TEMPORARY RESTRAINING ORDER