UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| LOCKHEED MARTIN CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>ACEWORLD HOLDINGS PTY LTD, et al.,<br><br>Defendants. | Case No. 5:19-cv-04074-EJD<br><br>**ORDER ISSUING PRELIMINARY INJUNCTION**<br><br>Re: Dkt. No. 2 |

On July 16, 2019, Lockheed filed a complaint and an ex parte application for a temporary restraining order seeking an anti-suit injunction to prevent Defendants from bringing suit against it in Australia. Dkt. Nos. 1, 2. On July 18, 2019, the court granted the application, issued a temporary restraining order, and ordered Defendants to show cause why a preliminary injunction should not issue. Dkt. No. 23 (the "July 18 Order"). Defendants filed a response, Lockheed replied, and Defendants objected to Lockheed's reply. Dkt. Nos. 38, 41, 42. The parties appeared before the court on August 1, 2019. At the hearing the parties agreed to an extension of the temporary restraining order, so the court extended it until August 9, 2019 at 5:00 p.m. Hearing Tr. at 20:12-21:1, 47:10-13. Having considered the parties' papers and oral arguments, the court finds that Defendants' arguments do not change the court's reasoning or the ruling of the July 18 Order. Lockheed has shown that a preliminary injunction should issue. This order supplements the July 18 Order by addressing certain of Defendants' arguments, but it does not change the reasoning of the July 18 Order.

1. The court overrules Defendants' objections to evidence submitted by Lockheed. Defendants maintained that this evidence—witness declarations describing Defendants' alleged

statements—is subject to two non-disclosure agreements.  As to the first agreement, the February 2019 Agreement re Multi-Party Discussions ("AMPD"), Defendants have not shown that it covered the alleged statements underlying Lockheed's complaint.  Ashforth Decl. Ex. B.  The AMPD pertains to discussions by Lockheed, Collinear, and third-party SA Photonics to form a new agreement among those three parties.  *Id.* at 1.  While Defendant Michael Ashforth participated in those discussions, he did so expressly "as a representative of [Collinear]" and "not as a representative of AMB Holdings Pty., Ltd."  *Id.* § vi.  Defendants are, therefore, not party to the AMPD.  Additionally, the AMPD—by its own terms—would not apply to the alleged threats. It provides, "No statements or offers made or Documents or other materials shared by any Party <u>during Discussions</u> shall be deemed an admission of any kind or constitute an admission or waiver of rights by any Party; <u>All Discussions</u> shall be on a 'without prejudice' basis, and any statement made <u>in connection with the Discussions</u> shall not be used in any legal proceeding against a Party that made such statement or provided such Document or material."  *Id.* §§ iii-iv (emphasis added). The term "Discussions" is defined as "discussion and exchange information related to a new three-party agreement intended to supersede and replace the [current contracts between Lockheed, Collinear, and SA Photonics]."  *Id.*  Defendants allegedly threatened litigation arising out of Lockheed's purported misrepresentations or omissions that led Defendants to invest in Collinear. Gustafson Decl. ¶ 4 ("[T]he investors claim that they have grounds to sue Lockheed Martin in connection with their own decisions to invest in Collinear.").  The alleged threats underlying Lockheed's complaint do not qualify as "Discussions" under the AMPD.

The second agreement—the June Multi-Party Non-Disclosure Agreement ("MPNDA")— covers Defendants and applies to "a potential investment in [Collinaer] by Lockheed," but it does not protect the alleged threats from disclosure.  Ashforth Decl. Ex. C at 1.  The MPNDA provides that "[a]ll Confidential Information exchanged by the Parties shall be on a 'without prejudice' basis, and no Confidential Information shall be used in any legal proceeding against a Party that made such statement or provided such materials."  *Id.* at 4.  However, Confidential Information is defined as "confidential or proprietary business, financial and technical information," examples of

Case No.: 5:19-cv-04074-EJD
ORDER ISSUING PRELIMINARY INJUNCTION
2

which include "financial statements, documents, business plans and strategies, source code, documentation, financial analysis, marketing plans, budgets, forecasts or projections, customer names, customer lists, customer data, product plans, products, services, inventions, processes, know-how, designs, drawings, [and/or] engineering or hardware configuration information." *Id.* at 1. The MPNDA covers confidential *information*, not threats made during negotiations. Accordingly, the court finds that neither the AMPD nor the MPNDA prohibited Lockheed from submitting the challenged evidence.

2. Defendants' arguments that, under Delaware law, Lockheed is not "closely related" to Collinear are unpersuasive. First, Defendants argue that the "closely related" standard is "only satisfied when the non-signatory is an officer, director, or affiliate of a signatory." Resp. at 1. While such a relationship may meet the "closely related" standard, Delaware law does not require that sort of relationship. *See e.g.*, *McWane, Inc. v. Lanier*, 2015 WL 399582, at *8 (Del. Ch. Jan. 30, 2015) (non-signatory stock holders were "closely related"); *Capital Grp. Companies, Inc. v. Armour*, 2004 WL 2521295, at *6 (Del. Ch. Oct. 29, 2004) (finding trustee was "closely related" to the subject contract).

Rather, "Delaware law . . . allows non-signatories to invoke [forum-selection] provisions in cases where they are closely related to one of the signatories such that the non-party's enforcement of the clause is foreseeable by virtue of the relationship between the signatory and the party sought to be bound." *Lexington Servs. Ltd. v. U.S. Pat. No. 8019807 Delegate, LLC*, 2018 WL 5310261, at *5 (Del. Ch. Oct. 26, 2018); *see* July 18 Order at 4-5. Here, Lockheed and Collinear entered a contract wherein Lockheed agreed to help Collinear raise capital to fund product development. Ashforth Decl. ¶ 11; *see also* Ashforth Decl. Ex. A § 2.3(b). Lockheed personnel solicited Defendants to invest in Collinear, including by providing information to Defendants that was "critically important to AMB's and [Ashforth's] decision to invest." Ashforth Decl. ¶ 17; *see also* Taylor Decl. ¶¶ 4-5. Defendants believed that Collinear would be "commercializing unique and groundbreaking Lockheed technology." Ashforth Decl. ¶ 12. It was "in reliance on Lockheed's representations" that Defendants decided to invest in Collinear.

Case No.: 5:19-cv-04074-EJD
ORDER ISSUING PRELIMINARY INJUNCTION
3

Ashforth Decl. ¶ 19; *see also* Taylor Decl. ¶ 6. Defendants' own evidence establishes that Collinear and Lockheed were so closely related—and that Lockheed was so "critically important" to Defendants' decision to invest—that Lockheed's enforcement of the Shareholder Agreement was foreseeable.

       Next, Defendants argue that the third-party beneficiary clause of the Shareholders Agreement prevents Lockheed from invoking the forum selection clause. That clause provides:

> <u>Binding Effect; No Third-Party Beneficiary</u>. . . . Nothing in this Agreement, express or implied, is intended or shall be construed to confer upon, or give to, any Person, firm, corporation or other entity other than the parties hereto any remedy or claim under or by reason of this Agreement or any terms or conditions hereof, and all of the terms, conditions, promises and agreements contained in this Agreement shall be for the sole and exclusive benefit of the parties hereto.

Compl. Ex. A § 4.8. But third-party beneficiary clauses do not limit the "closely related" doctrine. *Capital Grp. Companies*, 2004 WL 2521295, at *6 (finding trustee was "closely related" to the subject contract even though the contract "expressly excludes third-party beneficiaries."). The court's prior ruling that Lockheed may invoke the forum selection clause stands.

       3.      During the hearing, Defendants argued strongly that an anti-suit injunction should not issue because no underlying substantive actions are pending in Australian and American courts. *See* Hearing Tr. at 17:12-20:1; *see also* Resp. at 15 ("It is impossible for this Court to find that the parties and issues in the two jurisdictions are the same; there is no litigation pending in Australia and no substantive litigation pending in the United States."). Counsel argued, "[n]o court in the Ninth Circuit has ever issued an anti-suit injunction where there wasn't already a lawsuit pending in the foreign jurisdiction that the court could compare." Hearing Tr. at 17:17-20. The two Ninth Circuit cases addressing anti-suit injunctions and forum-selection clauses, *E. & J. Gallo Winery v. Andina Licores S.A.*, 446 F.3d 984 (9th Cir. 2006), and *Applied Medical Distribution Corp. v. Surgical Co. BV*, 587 F.3d 909 (9th Cir. 2009), both dealt with situations where foreign litigation had already been initiated. So, this court is confronted with an issue of first impression: whether the first step of the *E & J Gallo* anti-injunction test can be satisfied where there is a valid

Case No.: 5:19-cv-04074-EJD
ORDER ISSUING PRELIMINARY INJUNCTION
4

forum-selection clause, and where foreign litigation has been threatened but has not commenced.

The court first notes that Lockheed does not tilt at windmills. Defendants have threatened on multiple occasions to sue Lockheed in Australia under Australian law on claims arising out of purported misrepresentations or omissions by Lockheed that induced Defendants to invest in Collinear. Ashforth Decl. ¶ 35; Blair Decl. ¶ 6; Gustafson Decl. ¶¶ 4, 6-7; *see also* Ashforth Decl. ¶¶ 17-19. Defendants went so far as to reference three Australian statutes as the bases for the threatened litigation, and to represent that they had already spent significant money in anticipation of litigation and they were prepared to testify. Gustafson Decl. ¶¶ 6-7. Defendants have not denied making these representations and Defendant Michael Ashforth conceded, "As a negotiating tactic, I have, on a number of occasions over the last six months, referenced litigation as being the last resort in the event that the parties were unable to agree on a new commercial arrangement." Ashforth Decl. ¶ 35. Defendants' threats generally identified the purported facts and laws that would support the litigation.

The Court further notes that—as discussed in the July 18 Order—the forum-selection clause and the governing-law clause of the Shareholders Agreement are broadly written and would encompass the threatened claims. Shareholders Agreement §§ 4.9 ("This Agreement and <u>any claim, controversy or dispute arising under or related thereto</u> . . . and/or the interpretation and enforcement of the rights and duties of the parties, <u>whether arising in Law or in equity, in contract, tort or otherwise</u>, shall be governed by, and construed and interpreted in accordance with, the Laws of the State of Delaware.") (emphasis added), 4.11 ("Each party <u>irrevocably and unconditionally submits</u> to the personal jurisdiction of the federal and state courts of the United States in each and every jurisdiction where venue is proper . . . [and] agrees that <u>any actions or proceedings arising in connection with this Agreement or the transactions contemplated by this Agreement</u> shall be brought, tried and determined only in such courts") (emphasis added).

Based on these facts, the reasoning of *E & J Gallo* and *Applied Medical* compel the issuance of the anti-suit injunction. In *E & J Gallo*, the Ninth Circuit held that "the first step in determining whether an anti-suit injunction is appropriate is to determine whether or not the parties

Case No.: 5:19-cv-04074-EJD
ORDER ISSUING PRELIMINARY INJUNCTION
5

and the issues are the same, and whether or not the first action is dispositive of the action to be enjoined." 446 F.3d at 991 (quotation and citations omitted).[1] In *Applied Medical*, the Ninth Circuit returned to this step. It reasoned that in cases where the parties are the same, "the issues [between the foreign and U.S. courts] are meaningfully 'the same,'" where "the domestic action is capable of disposing of all the issues in the foreign action and all the issues in the foreign action fall under the forum selection clause." 587 F.3d at 915. In other words, "the crux of the functional inquiry in the first step of the analysis is to determine whether the issues are the same in the sense that all the issues in the foreign action fall under the forum selection clause and can be resolved in the local action." *Id.*

Applying the Ninth Circuit's reasoning to the facts here, the court concludes that the issues in the threatened Australian litigation are "functionally the same." *Id.* As discussed above, the threatened claims are subject to the forum-selection clause of the Shareholders Agreement. And they are to be considered under Delaware law, meaning that this forum can resolve them. In *E & J Gallo*, the Ninth Circuit rejected an argument that the claims were different because "[f]irst, it is not clear that [the foreign party] has claims under Ecuadorian law, as the contract contains a choice-of-law clause in favor of California. Second, to the degree that Ecuadorian law does apply, federal courts are capable of applying it to [the foreign party's] claims." 446 F.3d at 991. The *Applied Medical* Court reasoned, "Because all of [the enjoined party's] claims . . . as a practical matter depend on termination of the Agreement, they all 'aris[e] out of th[e] Agreement' and are subject to the forum selection clause." 587 F.3d at 914. The circumstances here are analogous. The July 18 Order and the preliminary injunction laid out below apply only to "claims. . . relating

---

[1] The Ninth Circuit provided a "see also" citation to a law review article and parenthetically noted that the article "stat[ed] that courts 'will not consider issuing anti-suit injunctions' in the absence of 'parallel local and foreign actions between the same parties over the same claim.'" *Id.* (quoting George A. Bermann, *The Use of Anti–Suit Injunctions in International Litigation*, 28 Colum. J. Transnat'l L. 589, 626 (1990)). The complete sentence quoted from the article reads, "The traditional view expressed in the American cases is that courts will not consider issuing anti-suit injunctions unless in fact there are (*or could be*) parallel local and foreign actions between the same parties over the same claim." Bermann, *supra* (emphasis added). This court understands the parenthetical as addressing the same parties and same claim analyses, and not as a requiring pre-existing parallel domestic and foreign litigation.

to the Defendants' investments in Collinear." July 18 Order at 7. Put another way, only claims that are subject to the forum-selection clause and the governing-law clause are enjoined.

Of course, Defendants are correct that there is no substantive litigation pending here; Lockheed's complaint seeks only to restrain Defendants from initiating the threatened litigation in Australia. But the onus to pursue the threatened claims belongs to Defendants, not Lockheed. Enjoining Defendants from suing in Australia merely enforces the forum-selection clause and will not deprive them of legal recourse. *See* Bermann, *supra*, at 626 & n.142 (stating that the existence of or possibility for parallel litigation is important because "an anti-suit injunction ought not issue if it would result in depriving the plaintiff of his or her only remedy," and noting, "The requirement of actual or potential concurrent proceedings mirrors *forum non conveniens* case law. It is well established that a competent court should not decline jurisdiction on grounds of inconvenience unless the more convenient forum is legally and practically available to the plaintiff."). Defendants may protect their rights by bringing suit in the United States, as they have already agreed to do.

Turning to the question of whether the parties are the same, the court finds that they are for similar reasons. The July 18 Order and this preliminary injunction merely enforce the forum-selection clause, to which all Defendants have agreed. Compl. ¶ 29; Compl. Ex. B. Thus, they are not overly broad. If a Defendant has no desire to pursue claims against Lockheed, then they are not impacted by the court's orders, and to the extent that they wish to pursue the threatened claims, they are bound by their own agreement to do so in the United States.

The July 18 Order and this order promote the strong policy favoring forum selection clauses. *See Applied Med.*, 587 F.3d at 918-19 ("[T]here is a strong policy favoring robust forum selection clauses."). The U.S. Supreme Court has stated that "clause[s] establishing *ex ante* the forum for dispute resolution ha[ve] the salutary effect of dispelling any confusion about where suits arising from the contract must be brought and defended, sparing litigants the time and expense of pretrial motions to determine the correct forum and conserving judicial resources that otherwise would be devoted to deciding those motions." *Carnival Cruise Lines, Inc. v. Shute*, 499

Case No.: 5:19-cv-04074-EJD
ORDER ISSUING PRELIMINARY INJUNCTION
7

U.S. 585, 593-94 (1991). They are especially useful in international business, because "[w]hen included in freely negotiated commercial contracts, they enhance certainty, allow parties to choose the regulation of their contract, and enable transaction costs to be reflected accurately in the transaction price." *E. & J. Gallo*, 446 F.3d at 992. For all of these reasons, the Ninth Circuit has held that they "should be enforced absent strong reasons to set them aside." *Id.* (quoting *Northrop Corp. v. Triad Int'l Mktg.*, S.A., 811 F.2d 1265, 1270 (9th Cir.1987)). There is no such strong reason here.

If the court were to dissolve the July 18 Order and refrain from issuing a preliminary anti-suit injunction, the forum-selection clause would "effectively become[] a nullity." *Id.* While Defendants have represented that they will not bring an anti-suit injunction against Lockheed in Australia, counsel for Defendants did not rule out Defendants bringing the threatened claims in Australia. Hearing Tr. at 15:19-21 ("With respect to what claims we brought in Australia, I don't know if our clients would bring claims, or what they're going to be."). If the court does not issue an anti-suit injunction, Defendants may well bring the threatened claims against Lockheed in violation of the forum-selection clause. Then Lockheed will certainly return to this court to, once again, request an anti-suit injunction. Such a result would waste the resources of the parties and the U.S. and Australian courts, and it would cause a greater harm to international comity. Moreover, in *Applied Medical*, the Ninth Circuit reasoned that "forum selection clauses would lose their reliability and robustness" if a party could avoid them by exploiting the formal requirements for an anti-suit injunction. 587 F.3d at 915. Preserving the reliability and robustness of the Shareholders Agreement's forum-selection clause requires this court to issue an anti-suit preliminary injunction.

For the reasons discussed above and in the July 18 Order, the Court finds that Lockheed has carried its burden showing an anti-suit preliminary injunction should issue.

IT IS THEREFORE ORDERED THAT the temporary restraining order issued by the court on July 18, 2019 is superseded by the following order.

IT IS FURTHER ORDERED THAT Defendants AMB Property (Providence) Pty Ltd.;

Case No.: 5:19-cv-04074-EJD
ORDER ISSUING PRELIMINARY INJUNCTION
8

Ivoryrose Holdings Pty Ltd., as Trustee for The Ashforth Superannuation Fund; and Michael F. Ashforth (collectively, the "AMB Defendants"); Aceworld Holdings Pty Ltd.; Khaki Investments Pty Ltd.; Marbruck Investments, LLC; TFW Corporate Pty Ltd.; Kemper B. Shaw; and James D. Taylor (collectively, the "Marbruck Defendants"); and Hoperidge Enterprises Pty Ltd., as Trustee for the Jones Family Trust ("Hoperidge," and collectively with the AMB Defendants and Marbruck Defendants, "Defendants") and their affiliates, officers, directors, shareholders, employees, and any other persons who are in active concert or participation with them, whether acting directly or indirectly, in the United States or abroad, shall not file claims or initiate litigation against Lockheed, its affiliates, officers, directors or employees, relating to the Defendants' investments in Collinear in a jurisdiction other than one in the United States.

IT IS FURTHER ORDERED THAT Defendants and their affiliates, officers, directors, shareholders, employees, and any other persons who are in active concert or participation with them, whether acting directly or indirectly, in the United States or abroad, shall not seek to enjoin in a foreign tribunal Lockheed Martin from either (i) securing the anti-suit injunctive relief ordered in this Order or (ii) securing any available relief in United States courts regarding potential claims against Lockheed relating to the Defendants' investments in Collinear.

IT IS FURTHER ORDERED THAT this preliminary injunction shall become immediately effective upon its entry.

IT IS FURTHER ORDERED THAT this preliminary injunction shall remain in full force and effect through the date on which judgment is entered in this matter.

**IT IS SO ORDERED.**

Dated: August 9, 2019

EDWARD J. DAVILA
United States District Judge

Case No.: 5:19-cv-04074-EJD
ORDER ISSUING PRELIMINARY INJUNCTION
9